BETSY C. MANIFOLD (182450)
manifold@whafh.com
RACHELE R. BYRD (190634)
byrd@whafh.com
ALEX J. TRAMONTANO (276666)
tramontano@whafh.com
STEPHANIE AVILES (350289)
saviles@whafh.com
**WOLF HALDENSTEIN ADLER**
**FREEMAN & HERZ LLP**
750 B Street, Suite 1820
San Diego, CA 92101
Telephone: 619/239-4599
Facsimile: 619/234-4599

*Attorneys for Plaintiff*

[Additional Counsel on Signature Page]

**UNITED STATES DISTRICT COURT**
**NORTHERN DISTRICT OF CALIFORNIA**

**OAKLAND DIVISION**

| | |
|---|---|
| ABDUL HIRANI, Derivatively on Behalf of Nominal Defendant ENPHASE ENERGY, INC., | Case No. _____ |
| Plaintiff, | **VERIFIED SHAREHOLDER DERIVATIVE COMPLAINT** |
| v. | |
| BADRINARAYANAN KOTHANDARAMAN, STEVEN J. GOMO, JAMIE HAENGGI, BENJAMIN KORTLANG, JOSEPH MALCHOW, RICHARD MORA, THURMAN JOHN RODGERS, and RAGHUVEER BELUR, | **DEMAND FOR JURY TRIAL** |
| Defendants, | |
| and | |
| ENPHASE ENERGY, INC., | |
| Nominal Defendant. | |

VERIFIED SHAREHOLDER DERIVATIVE COMPLAINT

Plaintiff Abdul Hirani ("Plaintiff"), by and through his undersigned attorneys, brings this derivative complaint for the benefit of nominal defendant Enphase Energy, Inc. ("Enphase" or the "Company"), against current and former members of the Company's Board of Directors (the "Board") and certain of its executive officers seeking to remedy the Individual Defendants' (defined below) breach of fiduciary duties and violations of federal law. Plaintiff alleges the following based upon personal knowledge as to himself and his own acts, and information and belief as to all other matters, based upon, *inter alia*, the investigation conducted by and through Plaintiff's attorneys, which included, among other things, a review of Defendants' publicly available documents, filings with the United States Securities and Exchange Commission ("SEC"), press releases published by and regarding Enphase, legal filings, news reports, securities analysts' reports about the Company, the securities class action *Trustees of the Welfare and Pension Funds of Local 464A Pension Fund v. Enphase Energy, Inc. et al,* Case No. 4:24-cv-09038-JST (N.D. Cal.) (the "Securities Class Action"), and other publicly available information.

## NATURE OF THE ACTION

1.     This is a shareholder derivative action brought by Plaintiff on behalf of Enphase against certain of its officers and current and former members of the Company's Board (the "Individual Defendants")[1] for breaches of their fiduciary duties between at least April 25, 2023 and October 22, 2024, inclusive (the "Relevant Period"), and the federal securities laws, as set forth below.

2.     Enphase is an energy technology company that develops and manufactures solar micro-inverters, battery energy storage, and electric vehicle ("EV") charging stations primarily for residential customers. The Company's energy solutions systems to convert solar panel output from direct current to alternating current, enabling the power generated to be transferred to the power grid.

---

[1] Individual Defendants are Badrinarayanan Kothandaraman ("Kothandaraman"), Steven J. Gomo ("Gomo"), Jamie Haenggi ("Haenggi"), Benjamin Kortlang ("Kortlang"), Joseph Malchow ("Malchow"), Richard Mora ("Mora"), Thurman John Rodgers ("Rodgers"), and Raghuveer Belur ("Belur"). The Individual Defendants, together with Enphase, are "Defendants."

VERIFIED SHAREHOLDER DERIVATIVE COMPLAINT

3.     Enphase's revenue generated from international markets has grown in recent years, representing approximately 20%, 24%, and 36% of total net revenues for the annual periods ended on December 31, 2021, 2022, and 2023, respectively. By the end of 2023, revenues from European markets alone, comprised approximately 31% of Enphase's total net revenues.

4.     In recent years, including prior to the start of the Relevant Period, the European markets for solar products has experienced widespread disruption as Chinese solar companies, in particular, have flooded the market for solar inverters by selling or "dumping" their products at prices far lower than market averages. This strategy has enabled Chinese suppliers to take vast shares of the market.  One article from *Reuters*, for instance, reported on data from the International Energy Agency showing that, in some cases, up to 95% of solar panels and parts installed in the European Union in 2023 came from China.[2]

5.     As detailed herein, throughout the Relevant Period, the Individual Defendants repeatedly downplayed competitive threats in the European solar inverter markets and assured investors that despite competition from cheaper Chinese alternatives, Enphase had "the ability to demand the premium" in its European pricing strategies.

6.     During an earnings call held April 25, 2023, for instance, Enphase's President and Chief Executive Officer ("CEO"), Defendant Kothandaraman, announced that Enphase's "European business is growing rapidly," and "sell-through of our microinverters in Europe reached an all time high" in the first quarter 2023.

7.     The truth began to be revealed on October 26, 2023, when Enphase reported an approximately 34% quarter-over-quarter decline in European revenue due to "softening in demand." Defendant Kothandaraman reassured investors that, despite competitive pressure to bring down prices, "there's no broad-based pricing adjustment from us."

8.     On this news, the Company's stock price declined $14.09 per share, or approximately

---

[2] *See* Kate Abnett and Nina Chestney, *With solar industry in crisis, Europe in a bind over Chinese imports*, REUTERS, Feb. 6, 2024, https://www.reuters.com/business/energy/with-solar-industry-crisis-europe-bind-over-chinese-imports-2024-02-06/ (last visited Dec. 31, 2024).

15%, to close at $82.09 per share on October 27, 2023.

9.    The full truth emerged on October 22, 2024, when the Company announced its third quarter 2024 financial results and revealed an approximately 15% quarter-over-quarter decline in European revenue.

10.    On this news, the price of the Company's common stock declined $13.76 per share, or approximately 15%, to close at $78.47 per share on October 23, 2024.

11.    As set forth herein, throughout the Relevant Period the Individual Defendants breached their fiduciary duties by issuing, causing the issuance of, and/or failing to correct the materially false and/or misleading statements and omissions of material fact to the investing public. Specifically, the Individual Defendants systematically overstated Enphase's ability to maintain its pricing levels and market share for microinverter products in Europe given competition from low-cost alternatives. As a result, the Individual Defendants caused the Company's public statements to be materially false and misleading at all relevant times.

12.    Additionally, in breach of their fiduciary duties, the Individual Defendants caused the Company to fail to maintain adequate internal controls.

13.    As a result of the foregoing, the Securities Class Action was filed against the Company and Defendants Kothandaraman and Belur on December 13, 2024.

14.    As a direct and proximate result of the Individual Defendants' misconduct, the Company has incurred significant financial losses, including the cost of defending and paying class-wide damages in the Securities Class Action, as well as additional losses, including reputational harm and loss of goodwill.

15.    Moreover, in light of the breaches of fiduciary duty engaged in by the Individual Defendants, most of whom are the Company's current directors, their collective engagement in fraud, the substantial likelihood of the directors' liability in this derivative action and Defendants' liability in the Securities Class Action, their being beholden to each other, their longstanding business and personal relationships with each other, and their not being disinterested and/or independent directors, a majority of Enphase's Board cannot consider a demand to commence

VERIFIED SHAREHOLDER DERIVATIVE COMPLAINT

litigation against themselves and the other Individual Defendants on behalf of the Company with the requisite level of disinterestedness and independence. Accordingly, Plaintiff did not make a demand on the Board because, as further detailed herein, demand would be a futile and useless act.

<u>**JURISDICTION AND VENUE**</u>

16.     This Court has subject matter jurisdiction pursuant to 28 U.S.C. § 1331 and Section 27 of the Securities Exchange Act of 1934 (the "Exchange Act") over the claims asserted herein for violations of Section 14(a) of the Exchange Act (15 U.S.C. § 78n(a) and SEC Rule 14a-9 (17 C.F.R. § 240.14a-9) promulgated thereunder.

17.     This Court has supplemental jurisdiction over Plaintiff's state law claims pursuant to 28 U.S.C. § 1367(a).

18.     This action is not a collusive action designed to confer jurisdiction on a court of the United States that it would not otherwise have.

19.     In connection with the acts, conduct and other wrongs complained of herein, Defendants, directly or indirectly, used the means and instrumentalities of interstate commerce, the United States mail, and the facilities of a national securities market.

20.     Venue is proper in this District pursuant to Section 27(a) of the Exchange Act and 28 U.S.C. §§ 1391 and 1401 because a substantial portion of the acts and omissions alleged herein, including the dissemination of materially false and misleading information, occurred in this District, Enphase is headquartered in this District, Defendants have received substantial compensation in this District by engaging in numerous activities that had an effect in this District, and the Securities Class Action is pending in this District.  This action should be assigned to the Oakland Division because (i) the Nominal Defendant's principal executive offices are located at 47281 Bayside Parkway, Fremont, California 94538; and (ii) a related case is already pending in the Oakland Division entitled, *Trustees of the Welfare and Pension Funds of Local 464A Pension Fund v. Enphase Energy, Inc. et al*, Case No. 4:24-cv-09038-JST (N.D. Cal.),

**PARTIES**

*Plaintiff*

21.    Plaintiff is, and has been at all relevant times, a shareholder of Enphase.

*Nominal Defendant*

22.    Nominal Defendant Enphase is incorporated under the laws of Delaware with its principal executive offices located at 47281 Bayside Parkway, Fremont, California 94538. Enphase's common stock is traded on the NASDAQ Global Market ("NASDAQ") under the ticker symbol "ENPH."

*Individual Defendants*

23.    Defendant Kothandaraman has served as a member of the Board and as the Company's President and CEO since September 2017, having previously served as Chief Operating Officer since April 2017. As set forth in the proxy statement filed by the Company on April 4, 2024 (the "2024 Proxy"), Defendant Kothandaraman received $19,527,534 in compensation from the Company in 2023. According to the 2024 Proxy, Kothandaraman beneficially owned 1,584,696 shares of the Company's common stock as of March 19, 2024, or approximately 1.2% of the total number of outstanding shares. According to the 2024 Proxy, the Board determined that Defendant Kothandaraman is not "independent" as defined under the applicable NASDAQ listing standards due to his service as President and CEO. Defendant Kothandaraman is also named as a defendant in the Securities Class Action.

24.    Defendant Gomo has served as a member of the Board since March 2011 and as Chair of the Board since October 2022. Defendant Gomo also serves as Chair of the Board's Audit Committee. From December 2020 through July 2021, Defendant Gomo served on the Board of Directors of Rodgers Silicon Valley Acquisition Corp, a special purpose acquisition company that completed a business combination with Enovix Corporation. According to the 2024 Proxy, Defendant Gomo received $374,991 in compensation from the Company in 2023.

25.    Defendant Haenggi has served as a member of the Board since August 2020. Defendant Haenggi also serves as a member of the Board's Nominating and Corporate Governance

VERIFIED SHAREHOLDER DERIVATIVE COMPLAINT

Committee. According to the 2024 Proxy, Defendant Haenggi received $314,852 in compensation from the Company in 2023.

26.    Defendant Kortlang has served as a member of the Board since May 2010. Defendant Kortlang also serves as Chair of the Board's Nominating and Corporate Governance Committee and as a member of the Audit Committee. According to the 2024 Proxy, Defendant Kortlang received $334,852 in compensation from the Company in 2023.

27.    Defendant Malchow has served as a member of the Board since February 2020. According to the 2024 Proxy, Defendant Malchow received $309,852 in compensation from the Company in 2023. From December 2020 through July 2021, Defendant Malchow served on the Board of Directors of Rodgers Silicon Valley Acquisition Corp, a special purpose acquisition company that completed a business combination with Enovix Corporation, where he remains a director. According to the 2024 Proxy, the Board determined that Defendant Malchow is not "independent" as defined under the applicable NASDAQ listing standards due to his service as a consultant to the Company.

28.    Defendant Mora has served as a member of the Board since February 2014. Defendant Mora also serves as a member of the Board's Audit Committee and Compensation Committee. According to the 2024 Proxy, Defendant Mora received $334,852 in compensation from the Company in 2023.

29.    Defendant Rodgers has served as a member of the Board since January 2017. Defendant Rodgers also serves as Chair of the Board's Compensation Committee and as a member of the Nominating and Corporate Governance Committee. From September 2020 to July 2021, he served as the Chairman of the Board of Directors and CEO of Rodgers Silicon Valley Acquisition Corp., a special purpose acquisition company that completed a business combination with Enovix Corporation, where he remains a director. According to the 2024 Proxy, Defendant Rodgers received $334,852 in compensation from the Company in 2023.

30.    Defendant Belur is a co-founder of the Company and has served as the Company's Senior Vice President and Chief Products Officer at all relevant times. Defendant Belur is also

named as a defendant in the Securities Class Action.

## FIDUCIARY DUTIES OF THE INDIVIDUAL DEFENDANTS

31.     By reason of their positions as officers and/or directors of Enphase, and because of their ability to control the business and corporate affairs of Enphase, the Individual Defendants owed Enphase and its shareholders fiduciary obligations of trust, loyalty, good faith, and due care, and were and are required to use their utmost ability to control and manage Enphase in a fair, just, honest, and equitable manner. The Individual Defendants were and are required to act in furtherance of the best interests of Enphase and its shareholders.

32.     Each director and officer of the Company owes to Enphase and its shareholders the fiduciary duty to exercise good faith and diligence in the administration of the Company and in the use and preservation of its property and assets and the highest obligation of fair dealing.

33.     The Individual Defendants, because of their positions of control and authority as directors and/or officers of Enphase, were able to and did, directly and/or indirectly, exercise control over the wrongful acts complained of herein.

34.     To discharge their duties, the officers and directors of Enphase were required to exercise reasonable and prudent supervision over the management, policies, controls, and operations of the Company.

35.     Each Individual Defendant, by virtue of his or her position as a director and/or officer owed to the Company and to its shareholders the highest fiduciary duties of loyalty, good faith, and the exercise of due care and diligence in the management and administration of the affairs of the Company, as well as in the use and preservation of its property and assets.  The conduct of the Individual Defendants complained of herein involves a knowing and culpable violation of their obligations as directors and/or officers of Enphase, the absence of good faith on their part, or a reckless disregard for their duties to the Company and its shareholders that the Individual Defendants were aware or should have been aware posed a risk of serious injury to the Company.

36.     As senior executive officers and directors of a publicly-traded company whose common stock was registered with the SEC pursuant to the Exchange Act and traded on the

NASDAQ, the Individual Defendants had a duty to prevent and not to effect the dissemination of inaccurate and untruthful information with respect to the Company's financial condition, performance, growth, financial statements, products, management, internal controls, earnings, and present and future business prospects, including the dissemination of false and/or materially misleading information regarding the Company's business, prospects, and operations, and had a duty to cause the Company to disclose in its regulatory filings with the SEC all those facts described in this Complaint that it failed to disclose, so that the market price of the Company's common stock would be based upon truthful, accurate, and fairly presented information.

37.    To discharge their duties, the officers and directors of Enphase were required to exercise reasonable and prudent supervision over the management, policies, practices, and internal controls of the Company.  By virtue of such duties, the officers and directors of Enphase were required to, among other things:

(i) Ensure that the Company was operated in a diligent, honest, and prudent manner in accordance with the laws and regulations of California, Delaware, and the United States, and pursuant to Enphase's own Code of Conduct;

(ii) Conduct the affairs of the Company in an efficient, business-like manner so as to make it possible to provide the highest quality performance of its business, to avoid wasting the Company's assets, and to maximize the value of the Company's stock;

(iii) Remain informed as to how Enphase conducted its operations, and, upon receipt of notice or information of imprudent or unsound conditions or practices, to make reasonable inquiry in connection therewith, and to take steps to correct such conditions or practices;

(iv) Establish and maintain systematic and accurate records and reports of the business and internal affairs of Enphase and procedures for the reporting of the business and internal affairs to the Board and to periodically investigate, or cause independent investigation to be made of, said reports and records;

(v) Maintain and implement an adequate and functioning system of internal legal, financial, and management controls, such that Enphase's operations would comply with all applicable laws and Enphase's financial statements and regulatory filings filed with the SEC and disseminated to the public and the Company's shareholders would be accurate;

(vi) Exercise reasonable control and supervision over the public statements made by the Company's officers and employees and any other reports or information that the Company was required by law to disseminate;

(vii)        Refrain from unduly benefiting themselves and other Company insiders at the expense of the Company; and

(viii)        Examine and evaluate any reports of examinations, audits, or other financial information concerning the financial affairs of the Company and to make full and accurate disclosure of all material facts concerning, *inter alia*, each of the subjects and duties set forth above.

38.    Each of the Individual Defendants further owed to Enphase and the shareholders the duty of loyalty requiring that each favor Enphase's interest and that of its shareholders over their own while conducting the affairs of the Company and refrain from using their position, influence, or knowledge of the affairs of the Company to gain personal advantage.

39.    At all times relevant hereto, the Individual Defendants were the agents of each other and of Enphase and were at all times acting within the course and scope of such agency.

40.    Because of their advisory, executive, managerial, and directorial positions with Enphase, each of the Individual Defendants had access to adverse, non-public information about the Company.

41.    The Individual Defendants, because of their positions of control and authority, were able to and did, directly or indirectly, exercise control over the wrongful acts complained of herein, as well as the contents of the various public statements issued by Enphase.

## **CONSPIRACY, AIDING AND ABETTING, AND CONCERTED ACTION**

42.     In committing the wrongful acts alleged herein, the Individual Defendants have pursued, or joined in the pursuit of, a common course of conduct, and have acted in concert with and conspired with one another in furtherance of their wrongdoing. The Individual Defendants caused the Company to conceal the true facts as alleged herein. The Individual Defendants further aided and abetted and/or assisted each other in breaching their respective duties.

43.     The purpose and effect of the conspiracy, common enterprise, and/or common course of conduct was, among other things, to facilitate and disguise the Individual Defendants' violations of law, including breaches of fiduciary duty and unjust enrichment.

44.     The Individual Defendants accomplished their conspiracy, common enterprise, and/or common course of conduct by causing the Company, purposefully, recklessly, or negligently, to conceal material facts, fail to correct such misrepresentations, and violate applicable laws.

45.     In furtherance of this plan, conspiracy, and course of conduct, the Individual Defendants collectively and individually took the actions set forth herein. Because the actions described herein occurred under the authority of the Board, each of the Individual Defendants, who are directors of Enphase, was a direct, necessary, and substantial participant in the conspiracy, common enterprise, and/or common course of conduct complained of herein.

46.     Each of the Individual Defendants aided and abetted and rendered substantial assistance in the wrongs complained of herein. In taking such actions to substantially assist the commission of the wrongdoing complained of herein, each Individual Defendant acted with actual or constructive knowledge of the primary wrongdoing, either took direct part in, or substantially assisted the accomplishment of that wrongdoing, and was or should have been aware of his or her overall contribution to and furtherance of the wrongdoing.

47.     At all times relevant hereto, each of the Individual Defendants was the agent of each of the other Individual Defendants and of Enphase and at all times acted within the course and scope of such agency.

**ENPHASE'S CODE OF CONDUCT**

48.    Enphase's Code of Conduct states that the Company's policy is to "conduct business with integrity and to follow ethical and legal business practices worldwide." The Code of Conduct applies to all of Enphase and its subsidiaries' employees, directors, and officers, (collectively "Enphase Representatives") as well as to suppliers, vendors, consultants and business partners.

49.    The Code of Conduct states that if the Company determines that any person is responsible for a violation of the Code of Conduct, that person "will be subject to disciplinary action up to and including termination of employment[.]"

50.    In a section titled "Compliance with Laws, Rules and Regulations," the Code of Conduct states:

> Enphase Representatives must respect and obey the laws of the cities, states and countries in which Enphase operates.  Enphase Representatives should strive to understand the legal and regulatory requirements applicable to their business units and areas of responsibility and should seek advice from managers or other appropriate individuals in case of any uncertainty.  Violation of laws, rules and regulations may subject you, as well as Enphase, to civil and criminal penalties. Each Enphase Supplier must respect, obey and comply with the laws applicable to its business activities.

51.    In a subsection titled "Accurate Financial Records," the Code of Conduct provides:

> Enphase's financial records must be accurate and complete in all material respects. They must be in compliance with laws and accounting practices. The Finance department is responsible for preparing and reporting Enphase's financial results, but those financial statements are the result of activities, transactions, entries and documents prepared throughout Enphase by many people. Enphase Representatives must make sure all such supporting transactions and documents are complete, accurate, and truthful. Enphase Suppliers will use commercially reasonably efforts to assist Enphase with its compliance objectives under this section. No Enphase Representative or Enphase Supplier may take or authorize any action that would cause our financial records or financial disclosure to fail to comply with generally accepted accounting principles, the rules and regulations of the Securities and Exchange Commission ("SEC"), and other laws, rules and regulations, or take any action to fraudulently induce, coerce, manipulate or mislead the Finance department or our independent auditors. No Enphase Representative or Enphase Supplier should knowingly allow Enphase to make any false or misleading statement or omit information necessary to make any of Enphase's statements and reports accurate. Any person who becomes aware of any departure from these standards has a responsibility to report their knowledge promptly to their manager

(if applicable), HR, Legal or via the Whistleblower Hotline.

**ENPHASE'S AUDIT COMMITTEE CHARTER**

52.    Pursuant to Enphase's Audit Committee Charter, the purpose of the Audit Committee is to:

> (i) monitor and/or assist the Board in monitoring and overseeing (a) the audit, compliance, accounting and financial reporting procedures of the Company, (b) the adequacy of the Company's internal financial controls, and (c) the overall integrity of the Company's financial statements; and (ii) monitor and oversee (x) the selection and independence of the Company's independent registered public accounting firm ("independent auditors") and (y) the management of risks associated with the Company's financial reporting, accounting and auditing matters.

53.    In a subsection titled "Annual Financial Reporting," the Audit Committee Charter states that the Audit Committee will:

- meet with representatives of the independent auditor prior to the audit to review planning and staffing of the audit;

- review and discuss the audited financial statements and related accounting and auditing principles and practices with appropriate members of the Company's management;

- review with management and the auditors, as appropriate, the Company's disclosures contained under the caption "Management's Discussion and Analysis of Financial Condition and Results of Operations" in its periodic reports to be filed with the Securities and Exchange Commission;

- discuss with the independent auditors the matters required to be discussed by the Public Company Accounting Oversight Board ("PCAOB") Accounting Standards No. 1301, including (1) the quality as well as acceptability of the accounting principles applied in the financial statements, and (2) new or changed accounting policies; significant estimates, judgments, uncertainties or unusual transactions; and accounting policies relating to significant financial statement items;

- review with appropriate management and auditor representatives their analysis of significant matters which relate to (1) the selection, application and effects of critical accounting policies applied by the Company, (2) internal auditing, financial management and control personnel, systems and procedures, (3) the status of any new, proposed or alternative accounting or financial reporting requirements, and (4) issues raised by any management letter from the auditors, difficulties encountered in the audit, disagreements with management, or other significant aspects of the audit;

- receive from the independent auditors a written disclosure and statement of all

VERIFIED SHAREHOLDER DERIVATIVE COMPLAINT

relationships between the auditors and the Company consistent with Rule 3526 of the PCAOB;

- discuss with the auditors any disclosed relationships or services that may impact the objectivity or independence of the auditors and take, or recommend that the full Board take, appropriate action to oversee the independence of the auditor;

- obtain from the independent auditors a statement of the audit fees and other categories of fees billed for the last fiscal year which are required to be disclosed in the Company's proxy statement for its annual meeting under the SEC's proxy rules, and consider whether the provision of any non-audit services is compatible with maintaining the auditors' independence;

- pre-approve, or establish pre-approval policies and procedures for the approval of, all audit and permissible non-audit services to be provided by the independent auditors. The Committee may form and delegate authority to subcommittees consisting of one or more members when appropriate, including the authority to grant pre-approvals of audit and permitted non-audit services, provided that decisions of such subcommittee to grant pre-approvals shall be presented to the full Committee at its next scheduled meeting; and

- recommend whether or not the audited financial statements should be included in the Company's Annual Report on Form l0-K for filing with the SEC.

54.   With respect to "Quarterly Financial Reporting," the Audit Committee Charter states that the Audit Committee shall review "the Company's interim financial results to be included in the Company's earnings press releases and on each Form 10-Q[,]" and that such review will normally include:

- the results of the independent auditors' review of the quarterly financial statements;

- management's analysis of any significant accounting issues, changes, estimates, judgments or extraordinary items relating to the financial statements; and

- the selection, application and effects of critical accounting policies applied by the Company.

55.   In a section titled "Internal Controls," the Audit Committee Charter states that the Audit Committee will review, at least annually:

- internal control systems and procedures of the Company;

- the status of management responses to the prior period audit management letter by the independent auditors;

- succession planning and staffing levels for the Company's finance and accounting employees;

VERIFIED SHAREHOLDER DERIVATIVE COMPLAINT

- the status and implementation of conduct codes concerning related-party transactions within the meaning of Rule 4-08(k) of Regulation S-X, conflicts of interest, ethical conduct, and compliance with applicable laws and regulatory policies; and

- if the Company has an internal audit function, the internal audit function's responsibilities, budget, and staffing.

56.     Additionally, with respect to "Risk Assessment and Management," the Audit Committee Charter states that the Audit Committee will "review and discuss with management and, as appropriate, the auditors the Company's major financial risk exposures and the steps taken by management to monitor and control these exposures."

## **SUBSTANTIVE ALLEGATIONS**

57.     Enphase develops, manufactures, and sells solar microinverters, which are primarily used in residential solar installations to convert solar panel output for transfer to the power grid.

58.     In line with its goals to grow market share worldwide, the Company's international revenues have been growing in recent years. Revenues from European markets, for instance, accounted for approximately 31% of the Company's total net revenues in 2023.

59.     The European market, meanwhile, has experienced drastic change and upheaval for at least the past decade, particularly as low-cost suppliers have flooded the market with extremely low-priced products.

60.     A December 14, 2023 article from *Reuters* reported that "China's cost to produce solar panels ha[d] plummeted 42% in the last year... giving manufacturers there an enormous advantage over rivals in places like the United States and Europe."[3] A later article reported that China "accounts for 80% of solar module production capacity after years of subsidies, driving oversupply that has triggered a collapse in global prices and provoked import duties from trading

---

[3] *China solar panel costs drop 42% from year ago – report*, REUTERS, Dec. 14, 2023, https://www.reuters.com/world/china/china-solar-panel-costs-drop-42-year-ago-report-2023-12-14/ (last visited Dec. 31, 2024).

partners to stave off being swamped by low-cost equipment."[4]

61.    Enphase's competitors were clear with their investors of the growing risks of such competition. On May 11, 2023, for instance, an executive from SMA Solar Technology AG ("SMA"), one of Enphase's German competitors, explained during an earnings call that SMA "will absolutely monitor [the Chinese pricing situation] seriously," and that they "could expect or will expect slight [price] reductions going forward," as a result of such competition.

***The Individual Defendants' False and Misleading Statements***

62.    On April 25, 2023, at the start of the Relevant Period, the Company issued a press release announcing its financial results from the first quarter 2023. The press release reported that "revenue in Europe increased approximately 25%, compared to the fourth quarter of 2022."

63.    Also on April 25, 2023, the Company hosted an earnings call with analysts and investors to discuss financial results from the quarter. During the call, Defendant Kothandaraman stated that Enphase's "European business is growing rapidly" as "sell-through of our microinverters in Europe reached an all-time high" in the quarter. In response to an analyst's request for comment on competition from Chinese companies in Europe and the potential risk that such competition would erode the Company's margins, Defendant Belur downplayed the question, stating that "[c]ompetition is strong everywhere" and that competition is "nothing new."

64.    Also, during the call, Defendant Kothandaraman indicated that the Company does not "see any drop in [Enphase's] pricing" in Europe and explained that the Company engages in "value-based pricing, which is basically pric[ing] products based upon the value they bring compared to the next best alternative."

65.    During the same April 25, 2023 call, Defendant Belur stated that the Company's value proposition was to provide "highly differentiated products, high-reliability products and great customer experience" which, he asserted, justified Enphase's higher prices as compared to

---

[4] Andrew Hayley, *China solar industry faces shakeout, but rock-bottom prices to persist*, Reuters, Apr. 3, 2024, https://www.reuters.com/business/energy/china-solar-industry-faces-shakeout-rock-bottom-prices-persist-2024-04-03/ (last visited Dec. 31, 2024).

competitors. In response to an analyst's question of whether Enphase had to make a "trade-off between price and volume" because "installers may be prioritizing cost," Defendant Kothandaraman stated that such a trade-off was unnecessary because Enphase's "high quality leads to high price" and installers "understand it is not about just the price of the inverter," but "the entire cost of ownership."

66.     On July 27, 2023, Enphase issued a press release announcing its second quarter 2023 financial results. The press release stated that "revenue in Europe increased approximately 25%, compared to the first quarter of 2023."

67.     Also on July 27, 2023, the Company hosted an earnings call with analysts and investors to discuss financial results from the quarter. During the call, Defendant Kothandaraman touted Enphase's "strong broad-based growth across Europe," with markets in the Netherlands and France being "very strong" and the Company gaining "real traction" in Germany. Defendant Kothandaraman further stated that "we see increasingly complex power markets and home energy management needs playing right into our strengths," and that Enphase's "quality and service . . . will help strengthen our market position."

68.     The statements identified above were materially false and/or misleading and failed to disclose material adverse facts about the Company's business, operations, and prospects. Specifically, the Individual Defendants systematically overstated Enphase's ability to maintain its pricing levels and market share for microinverter products in Europe given competition from low-cost alternatives. As a result, the Individual Defendants caused the Company's public statements to be materially false and misleading at all relevant times.

***The Truth Begins to Emerge, as Materially False and Misleading Statements Continue***

69.     On October 26, 2023, Enphase issued a press release announcing financial results for the third quarter 2023. The press release reported that the Company's "revenue in Europe decreased approximately 34%, compared to the second quarter of 2023 due to high inventory at our distribution partners along with a softening in demand in our key markets – the Netherlands, France, and Germany."

70.     During an earnings call with analysts and investors held the same day, Defendant Kothandaraman suggested that in the Netherlands, Enphase's largest European market, poor sell-through of the Company's products was a result of temporary "confusion" concerning regulatory changes in the solar industry. With respect to the Company's 34% quarter-over-quarter decrease in sell-through of Enphase's products in France, Defendant that Kothandaraman suggested the decline was "driven by seasonality."

71.     Also, during the call, Defendant Kothandaraman responded to an analyst's question concerning the price competition facing Enphase by stating that installers "do want to take advantage of the lowest cost available" and "may want to switch to somebody who's offering low cost." Even still, Defendant Kothandaraman insisted that the Company would not adjust its pricing strategies, despite these competitive market forces, indicating that "there's no broad-based pricing adjustment from us."

72.     On the news, the price of Enphase common stock declined $14.09 per share, or nearly 15%, closing at $82.09 per share on October 27, 2023.

73.     On February 6, 2024, Enphase issued a press release announcing fourth quarter 2023 financial results. The press release stated that "revenue in Europe decreased approximately 70%, compared to the third quarter of 2023" due to a "further softening in demand."

74.     During an earnings calls with analysts and investors held the same day, Defendant Kothandaraman explained that the Netherlands continued to be impacted by regulatory "confusion" and that the landscape in Germany was "tricky." Defendant Kothandaraman also added that "as far as France is concerned, we see steady demand in France" and noted that "[u]tility rates are increasing in France. . . . [s]o we think that's a general positive." At no point did the Individual Defendants identify competition from Chinese manufacturers as a reason for the Company's poor performance.

75.     During the same February 6, 2024 earnings call, Defendant Kothandaraman responded to an analyst's question concerning the Company's pricing strategy and increased competition by stating, in relevant part, that that "high quality for me is high price" and "we have the ability to demand the premium." Defendant Kothandaraman further stated that "even with those

high prices, . . . our market share is very healthy," and that he did not "believe that we will need to drop pricing in order to gain market share."

76. On April 4, 2024, Enphase filed the 2024 Proxy with the SEC wherein Defendants solicited shareholder votes – in advance of an annual stockholder meeting held on May 15, 2024 – in favor of numerous proposals, including the re-election of Defendants Kothandaraman and Malchow.

77. The 2024 Proxy stated that Enphase had adopted the Code of Conduct, applicable to all officers, directors and employees.

78. With respect to "Risk Management," the 2024 Proxy stated that "[o]ne of the Board's key functions is informed oversight of our risk management process[,]" and that "the Board is responsible for monitoring and assessing strategic risk exposure, including a determination of the nature and level of risk appropriate for Enphase."

79. The 2024 Proxy failed to disclose, however, that the Individual Defendants had systematically overstated Enphase's ability to maintain its pricing levels and market share for microinverter products in Europe given competition from low-cost alternatives.

80. Additionally, the 2024 Proxy failed to disclose that: (i) the Individual Defendants violated the Company's Code of Conduct, either without waivers or without such waivers being disclosed; and (ii) the Board and its committees were not adequately exercising their risk oversight functions and were causing or permitting the Company to issue false and misleading statements.

81. The 2024 Proxy further failed to disclose that the Company was beset with compliance problems that posed significant risks of harm, and that the Board lacked a system to oversee mission-critical compliance risks related to compliance and financial reporting.

82. The false and misleading elements of the 2024 Proxy were material to stockholders in voting on the Board's proposals, particularly with respect to stockholders' consideration of the reelection of incumbent directors.

83. On April 23, 2024, Enphase issued a press release announcing financial results from the first quarter of 2024. The press release reported that "revenue in Europe increased approximately

19
VERIFIED SHAREHOLDER DERIVATIVE COMPLAINT

70%, compared to the fourth quarter of 2023."

84.     Also on April 23, 2024, the Company hosted an earnings call with analysts and investors to discuss results from the quarter. During the call, Defendant Kothandaraman noted that Enphase was "encouraged by the demand signals we are seeing" in the Netherlands after receiving some clarity in the regulatory landscape and was "encouraged by the continued strength" in France "supported by higher utility rates[.]" With respect to Germany, Defendant Kothandaraman noted that sell-through of Enphase's products "was up 28% compared to Q4." Defendant Kothandaraman also stated that Enphase was growing market share in Europe due to "highlighting our value" to installers and claimed that installer relationships were the "single most [significant] reason" that the Company has been able to increase its market share.

85.     On July 23, 2024, the company published a press release announcing financial results from the second quarter 2024. The press release noted that "revenue in Europe for the second quarter of 2024 remained flat when compared to the first quarter of 2024."

86.     During an earnings call, also held on July 23, 2024, Defendant Kothandaraman explained that the Netherlands was still being affected by "regulatory uncertainty" and that France was challenged because of unfavorable utility rate spreads.

87.     In response to analyst's question regarding potential 5% to 10% price cut by Enphase in Europe, Defendant Kothandaraman responded that "[Enphase] do[es]n't have any plans today to change our pricing." In response to a request for further elaboration, Defendant Kothandaraman again insisted "there isn't anything extraordinary we are planning to do [in terms of price concessions]," because the "pricing situation is relatively stable in my opinion."

88.     The statements identified above were materially false and/or misleading and failed to disclose material adverse facts about the Company's business, operations, and prospects. Specifically, the Individual Defendants systematically overstated Enphase's ability to maintain its pricing levels and market share for microinverter products in Europe given competition from low-cost alternatives. As a result, the Individual Defendants caused the Company's public statements to be materially false and misleading at all relevant times.

***The Truth is Revealed***

89.     On October 22, 2024, Enphase announced in a press release that "revenue in Europe decreased approximately 15% for the third quarter of 2024, compared to the second quarter of 2024" due to "further softening in European demand."

90.     Also on October 22, 2024, the Company hosted an earnings call with analysts and investors to discuss results from the quarter. During the call, Defendant Kothandaraman disclosed that, "[w]hile every country in Europe has its nuances, the overall business environment in the region is challenging." With respect to the Company's European pricing strategies, Defendant Kothandaraman acknowledged that the Company has occasionally adjusted pricing on a customer-by-customer basis, but characterized these price concessions as discretionary business practices. Defendant Kothandaraman again insisted that "we are not dropping pricing anywhere."

91.     On this news, the price of Enphase common stock declined nearly 15%, to close at $78.47 per share on October 23, 2024.

***Harm to the Company***

92.     As a direct and proximate result of the Individual Defendants' misconduct, Enphase has lost and expended, and will lose and expend, millions of dollars.

93.     Such expenditures include, but are not limited to, the legal fees associated with the Securities Class Action filed against the Company and Defendants Kothandaraman and Belur, and amounts paid to outside lawyers, accountants, and investigators in connection therewith.

94.     Such expenditures also include, but are not limited to, significant compensation and benefits paid to the Individual Defendants who breached their fiduciary duties to the Company.

95.     Furthermore, the Securities Class Action has exposed the Company to massive class-wide liability.

## **DERIVATIVE AND DEMAND FUTILITY ALLEGATIONS**

96.　　Plaintiff brings this action derivatively in the right and for the benefit of the Company to redress injuries suffered and to be suffered as a direct and proximate result of the breach of fiduciary duties by the Individual Defendants.

97.　　Enphase is named solely as a nominal party in this action. This is not a collusive action to confer jurisdiction on this Court that it would otherwise not have.

98.　　Plaintiff is a current shareholder of Enphase and was a continuous shareholder of the Company during the period of the Individual Defendants' wrongdoing alleged herein. Plaintiff will adequately and fairly represent the interests of the Company in enforcing and prosecuting its rights and retained counsel competent and experienced in derivative litigation.

99.　　A pre-suit demand on the Board of Enphase is futile and, therefore, excused. At the time this action was commenced, the seven-member Board was comprised of Defendants Kothandaraman, Gomo, Haenggi, Kortlang, Malchow, Mora, and Rodgers (the "Director Defendants"). Accordingly, Plaintiff is only required to show that four Directors cannot exercise independent objective judgment about whether to bring this action or whether to vigorously prosecute this action. As set forth below, all of the Board's current members are incapable of making an independent and disinterested decision to institute and vigorously prosecute this action, including because they face a substantial likelihood of liability, and so demand on the Board to institute this action is not necessary because such a demand would have been a futile act.

100.　　The Director Defendants either knew or should have known of the false and misleading statements that were issued on the Company's behalf and took no steps in a good faith effort to prevent or remedy that situation.

101.　　Each of the Director Defendants approved and/or permitted the wrongs alleged herein to have occurred and participated in efforts to conceal or disguise those wrongs from the Company's stockholders or recklessly and/or with gross negligence disregarded the wrongs complained of herein and are therefore not disinterested parties.

102.　　Moreover, the Director Defendants willfully ignored, or recklessly failed to inform

22

VERIFIED SHAREHOLDER DERIVATIVE COMPLAINT

themselves of, the obvious problems with the Company's internal controls, practices, and procedures and failed to make a good faith effort to correct the problems or prevent their recurrence.

103.    Defendant Kothandaraman serves as the Company's President CEO, is not disinterested or independent, and is therefore incapable of considering a demand. Thus, the Company admits that Defendant Kothandaraman is a non-independent director.

104.    Furthermore, Defendant Kothandaraman is not disinterested or independent because he is named as a defendant, and faces significant personal liability, in the Securities Class Action based on substantially the same wrongdoing as alleged herein, specifically issuing materially false and misleading statements during the Relevant Period.

105.    As set forth in the 2024 Proxy, the Company admits that Defendant Malchow is not an independent director due to his role as a consultant for the Company. Defendant Malchow, therefore, is not disinterested or independent and is therefore incapable of considering a demand.

106.    Defendants Kortlang, Gomo, and Mora serve or served on the Company's Audit Committee during the Relevant Period (the "Audit Defendants") and, pursuant to the Audit Committee Charter, were specifically charged with the responsibility to assist the Board in fulfilling its oversight responsibilities related to, *inter alia*, financial accounting and reporting, the underlying internal controls and procedures over financial reporting, and the audits of the financial statements. At all relevant times, however, the Audit Defendants breached their fiduciary duty to the Company by failing to prevent, correct, or inform the Board of the issuance of material misstatements and omissions regarding the Company's business and the adequacy of its internal controls as alleged above. Therefore, the Audit Defendants cannot independently consider any demand to sue themselves for breaching their fiduciary duties to the Company, as that would expose them to substantial liability and threaten their livelihoods.

107.    The Director Defendants, as members of the Board, were and are subject to the Company's Code of Conduct. The Code of Conduct goes well beyond the basic fiduciary duties required by applicable laws, rules, and regulations, requiring the Directors to also adhere to the Company's standards of business conduct. The Director Defendants violated the Code of Conduct

because they knowingly or recklessly participated in making and/or causing the Company to make the materially false and misleading statements alleged herein. Because the Director Defendants violated the Code of Conduct, they face a substantial likelihood of liability for breaching their fiduciary duties, and therefore demand upon them is futile.

108.    All of the Board's current members derive substantial revenue from the Company, control the Company, and are indebted to each other. These conflicts of interest have precluded the Board's current members from calling into question the Director Defendants' conduct. For instance, from at least December 2020 through July 2021, Defendants Gomo, Malchow, and Rodgers all served on the Board of Directors of Rodgers Silicon Valley Acquisition Corp, a special purpose acquisition company that completed a business combination with Enovix Corporation. Defendants Malchow and Rodgers continue to serve as directors of Enovix together.

109.    Moreover, none of the Director Defendants have taken remedial action to redress the conduct alleged herein.

110.    The Director Defendants' conduct described herein and summarized above could not have been the product of legitimate business judgment as it was based on bad faith and intentional, reckless, or disloyal misconduct. Thus, none of the directors can claim exculpation from their violations of duty pursuant to the Company's charter. As a majority of the directors face a substantial likelihood of liability, they are self-interested in the transactions challenged herein. They cannot be presumed to be capable of exercising independent and disinterested judgment about whether to pursue this action on behalf of the shareholders of the Company. Accordingly, demand is excused as being futile.

111.    The acts complained of herein constitute violations of fiduciary duties owed by Enphase's officers and directors, and these acts are incapable of ratification.

112.    Thus, for all of the reasons set forth above, all of Enphase's current directors are unable to consider a demand with disinterestedness and independence. Consequently, a demand upon the Board is excused as futile.

**COUNT I**

**Against the Individual Defendants for Violations of § 14(a)**
**of the Exchange Act, 15 U.S.C. § 78n(a) and Rule 14a-9 (17 C.F.R. § 240.14a-9)**

113.    Plaintiff incorporates by reference and realleges each and every allegation contained above, as though fully set forth herein.

114.    The Individual Defendants violated § 14(a) of the Exchange Act, 15 U.S.C. § 78n(a)(1), and Rule 14a-9, 17 C.F.R. § 240.14a-9, promulgated thereunder by the SEC.

115.    The Individual Defendants, individually and in concert, disseminated and/or permitted the dissemination of materially false and misleading statements in the 2024 Proxy filed with the SEC. As alleged above, this filing contained materially false and misleading statements concerning the Company's regulatory standing and its internal controls over financial reporting.

116.    Under the direction and watch of the Director Defendants, the 2024 Proxy failed to disclose, *inter alia*: (i) that the Individual Defendants had systematically overstated Enphase's ability to maintain its pricing levels and market share for microinverter products in Europe given competition from low-cost alternatives; (ii) the Individual Defendants violated the Company's Code of Conduct, either without waivers or without such waivers being disclosed; and (iii) the Board and its committees were not adequately exercising their risk oversight functions and were causing or permitting the Company to issue false and misleading statements.

117.    In the exercise of reasonable care, these Defendants should have known that the statements contained in the 2024 Proxy were materially false and misleading.

118.    The misrepresentations and omissions in the 2024 Proxy were material to Company stockholders in voting on the 2024 Proxy. The misrepresentations and omissions were material to Company stockholders in voting on the matters set forth for stockholder determination in the 2024 Proxy, including but not limited to the reelection of certain Director Defendants.  The 2024 Proxy was an essential link in Defendants' insulation from stockholder challenge.

119.    The false and misleading elements of the 2024 Proxy led to, among other things, the election of Defendants Kothandaraman and Malchow to the Board, thereby allowing them to continue breaching their fiduciary duties to the Company.

120.    The Company was damaged as a result of the Individual Defendants' material misrepresentations and omissions in the 2024 Proxy.

### COUNT II
**Against the Individual Defendants**
**For Breach of Fiduciary Duty**

121.    Plaintiff incorporates by reference and realleges each and every allegation contained above, as though fully set forth herein.

122.    The Individual Defendants owed the Company fiduciary obligations. By reason of their fiduciary relationships, the Individual Defendants owed the Company the highest obligation of good faith, fair dealing, loyalty, and due care.

123.    The Individual Defendants violated and breached their fiduciary duties of care, loyalty, reasonable inquiry, and good faith.

124.    The Individual Defendants engaged in a sustained and systematic failure to properly exercise their fiduciary duties. Among other things, the Individual Defendants breached their fiduciary duties of loyalty and good faith by failing to implement and monitor adequate internal controls over the Company's financial reporting and, as a consequence, issuing or permitting the issuance of materially false and misleading statements in the Company's SEC filings and other public disclosures. These actions could not have been a good faith exercise of prudent business judgment to protect and promote the Company's corporate interests.

125.    Specifically, the Individual Defendants systematically overstated Enphase's ability to maintain its pricing levels and market share for microinverter products in Europe given competition from low-cost alternatives. As a result, the Individual Defendants caused the Company's public statements to be materially false and misleading at all relevant times.

126.    The Individual Defendants had actual knowledge that the Company was engaging in the fraudulent scheme set forth herein, and that internal controls were not adequately maintained, or acted with reckless disregard for the truth, in that they caused the Company to improperly engage in the fraudulent scheme and to fail to maintain adequate internal controls, even though such facts were available to them. The Individual Defendants, in good faith, should have taken appropriate action to

1    correct the scheme alleged herein and to prevent it from continuing to occur.

2       127.     In further breach of their fiduciary duties, the Individual Defendants failed to correct

3    and/or caused the Company to fail to correct the false and/or misleading statements and omissions

4    of material fact referenced herein.

5       128.     As a direct and proximate result of the Individual Defendants' failure to fulfill their

6    fiduciary obligations, the Company has sustained significant damages.

7       129.     As a result of the misconduct alleged herein, the Individual Defendants are liable to

8    the Company. As a direct and proximate result of the Individual Defendants' breach of their fiduciary

9    duties, the Company has suffered damage, not only monetarily, but also to its corporate image and

10   goodwill. Such damage includes, among other things, costs incurred in defending itself in the

11   Securities Class Action, exposing the Company to millions of dollars in potential class-wide

12   damages in the Securities Class Action, and damage to the share price of the Company's stock,

13   resulting in an increased cost of capital, and reputational harm.

14      130.     Plaintiff, on behalf of Enphase, has no adequate remedy at law.

### COUNT III
**Against the Individual Defendants for Aiding and
Abetting Breach of Fiduciary Duty**

17      131.     Plaintiff incorporates by reference and realleges each and every allegation contained

18   above, as though fully set forth herein.

19      132.     By encouraging and accomplishing the illegal and improper transactions alleged

20   herein and concealing them from the public, the Individual Defendants have each encouraged,

21   facilitated, and advanced their breach of their fiduciary duties.  In so doing, the Individual

22   Defendants have each aided and abetted, conspired, and schemed with one another to breach their

23   fiduciary duties, waste the Company's corporate assets, and engage in the ultra vires and illegal

24   conduct complained of herein.

25      133.     Plaintiff, on behalf of Enphase, has no adequate remedy at law.

## COUNT IV
### Against the Individual Defendants
### For Unjust Enrichment

134.    Plaintiff incorporates by reference and realleges each and every allegation contained above, as though fully set forth herein.

135.    By their wrongful acts, violations of law, and false and misleading statements and omissions of material fact that they made and/or caused to be made, the Individual Defendants were unjustly enriched at the expense of, and to the detriment of, Enphase.

136.    The Individual Defendants either benefitted financially from the improper conduct, or received bonuses, stock options, or similar compensation from Enphase that were tied to the performance or artificially inflated valuation of Enphase, or received compensation that was unjust in light of the Individual Defendants' bad faith conduct.

137.    Plaintiff, as a shareholder and a representative of Enphase, seeks restitution from the Individual Defendants and seeks an order from this Court disgorging all profits, benefits and other compensation procured by the Individual Defendants due to their wrongful conduct and breach of their fiduciary and contractual duties.

138.    Plaintiff, on behalf of Enphase, has no adequate remedy at law.

## COUNT V
### Against the Individual Defendants
### For Abuse of Control

139.    Plaintiff incorporates by reference and realleges each and every allegation contained above, as though fully set forth herein.

140.    The Individual Defendants misconduct alleged herein constituted an abuse of their control over the Company, for which they are legally liable.

141.    As a direct and proximate cause of the Individual Defendants' abuse of control, the Company has sustained substantial damages.

142.    Plaintiff, on behalf of Enphase, has no adequate remedy at law.

VERIFIED SHAREHOLDER DERIVATIVE COMPLAINT

**COUNT VI**
**Against the Individual Defendants**
**For Waste of Corporate Assets**

143.    Plaintiff incorporates by reference and realleges each and every allegation contained above, as though fully set forth herein.

144.    The wrongful conduct alleged regarding the issuance of false and misleading statements was continuous, connected, and on-going throughout the time period in issue.  It resulted in continuous, connected, and ongoing harm to the Company.

145.    As a result of the misconduct described above, the Individual Defendants wasted corporate assets by, *inter alia*: (i) paying and colleting excessive compensation and bonuses; and (ii) incurring potentially millions of dollars of legal liability and/or legal costs, including defending the Company and its officers against the Securities Class Action.

146.    As a result of the waste of corporate assets, the Individual Defendants are liable to the Company.

147.    Plaintiff, on behalf Enphase, has no adequate remedy at law.

**PRAYER FOR RELIEF**

WHEREFORE, Plaintiff demands judgment as follows:

A.    Awarding money damages against all Individual Defendants, jointly and severally, for all losses and damages suffered as a result of the acts and transactions complained of herein, together with pre-judgment interest, molded in a fashion to ensure the Individual Defendants do not participate therein or benefit thereby;

B.    Directing all Individual Defendants to account for all damages caused by them and all profits and special benefits and unjust enrichment they have obtained as a result of their unlawful conduct, including all salaries, bonuses, fees, stock awards, options and common stock sale proceeds, and imposing a constructive trust thereon;

C.    Awarding punitive damages;

D.    Awarding costs and disbursements of this action, including reasonable attorneys'

VERIFIED SHAREHOLDER DERIVATIVE COMPLAINT

1   fees, accountants' and experts' fees, costs, and expenses; and

2         E.     Granting such other and further relief as the Court deems just and proper.

3                                     **JURY DEMAND**

4      Plaintiff hereby demands a trial by jury.

5   Dated: December 31, 2024                 **WOLF HALDENSTEIN ADLER**

6                                       **FREEMAN & HERZ LLP**

7                           By: */s/ Betsy C. Manifold*

8                           BETSY C. MANIFOLD
                                RACHELE R. BYRD

9                           ALEX J. TRAMONTANO
                                STEPHANIE AVILES

10                         750 B Street, Suite 1820
                                San Diego, CA 92101

11                         Telephone: 619/239-4599
                                Facsimile: 619/234-4599

12                         manifold@whafh.com
                                byrd@whafh.com

13                         tramontano@whafh.com
                                saviles@whafh.com

14                         Herbert W. Mondros

15                         **RIGRODSKY LAW, P.A.**
                        1007 N. Orange Street, Suite 453

16                         Wilmington, DE 19801
                        hwm@rl-legal.com

17                         Joshua H. Grabar

18                         **GRABAR LAW OFFICE**
                        One Liberty Place

19                         1650 Market Street, Suite 3600
                        Philadelphia, PA 19103

20                         Telephone: 267-507-6085
                        Email: jgrabar@grabarlaw.com

21

22

23

24

25

26

27

28

VERIFIED SHAREHOLDER DERIVATIVE COMPLAINT

## **VERIFICATION**

I, Abdul Hirani, have reviewed the allegations made in this Verified Shareholder Derivative Complaint, know the contents thereof, and authorize its filing. To those allegations of which I have personal knowledge, I believe those allegations to be true. As to those allegations of which I do not have personal knowledge, I rely upon my counsel and their investigation and believe them to be true. I further declare that I am a current holder, and have been a holder, of Enphase Energy, Inc. common stock at all relevant times.

I declare under penalty of perjury under the laws of the United States that the foregoing is true and correct. Executed this _____ day of _____ 2024.

12/23/2024

Docusigned by:

_____
Abdul Hirani

Abdul Hirani
8C205764322B4AA...